# United States District Court
# Central District of California

| | |
|---|---|
| JOSEPH SAENZ, on behalf of himself and others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>LOWE'S HOME CENTERS, LLC, a North Carolina limited liability company; and DOES 1 through 20, inclusive,<br><br>　　　　　　　Defendants. | Case № 2:17-cv-08758-ODW (PLA)<br><br>**ORDER GRANTING PRELIMINARY APPROVAL [37]** |

## I.　INTRODUCTION

Plaintiff Joseph Saenz brought this wage-and-hour class action suit against Defendant Lowe's Home Center, LLC on behalf of non-exempt employees alleging that Defendant failed to provide accurate itemized wage statements to Plaintiff and the proposed class in violation of California Labor Code section 226. (First Am. Compl. ("FAC") ¶ 4, ECF No. 21.)

The parties reached a settlement on behalf of the class, and Plaintiff now moves without opposition for preliminary approval of the settlement.[1] (Mot. for Prelim. Approval of Class Action Settlement ("Mot."), ECF No. 37-1.)　For the reasons

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

discussed below, the Court **GRANTS** the Motion.

## II. BACKGROUND

Defendant employs non-exempt employees throughout California. (FAC ¶ 32.) Plaintiff brought the current lawsuit seeking to recover civil penalties, interest, attorneys' fees, costs, and expenses pursuant to the Private Attorney General Act ("PAGA") for Defendant's failure in providing Plaintiff and the proposed class members with "itemized wage statements that accurately showed their gross and net wages earned, total hours worked and all applicable hourly rates in effect, and the number of hours worked at each hourly rate in accordance with" California Labor Code section 226. (*Id.* ¶¶ 29, 36.)

On September 25, 2018, the parties reached a settlement in this matter, and they now seek preliminary approval of the settlement. (Stipulation, ECF No. 33.)

## III. SETTLEMENT TERMS

The key provisions of the parties' Class Action Settlement Agreement ("Settlement Agreement") are set forth below. (*See* Decl. of Samantha A. Smith ("Smith Decl.") Ex. 1, ECF No. 37-2.)

### A. Proposed Class

The Settlement Agreement defines the proposed class as: "All non-exempt employees of Defendant Lowe's Home Centers, LLC who received a wage statement at the time of their in-store termination during the Class Period and who worked overtime in the period covered by that wage statement." (*Id.* at 3.) The Class Period is July 15, 2016, to January 31, 2018. (*Id.* at 2.) Defendant estimates that there are approximately 2323 potential members of the class ("Class Size"). (*Id.* at 4.)

### B. Payment Terms

In full settlement of the claims asserted in this lawsuit, Defendant agrees to pay up to $250,000 (the "Gross Settlement Amount"). (*Id.* at 5.) The Gross Settlement Amount includes "any statutory and civil penalties, damages, or other relief arising from Defendant's provision of allegedly inaccurate wage statements; interest, attorneys' fees

and costs . . . the fees and costs of the Administrator . . . including any fees and costs in connection with notice and the exclusion process, up to a maximum of Thirty Thousand Dollars ($30,000); settlement payments; and the incentive award." (*Id.*) If the Class Size increases by 15% or more, the Gross Settlement Amount will increase by $107.66 per additional class member. (*Id.*)

**C.     Attorneys' Fees and Costs**

The Settlement Agreement authorizes Plaintiff's counsel to petition the Court for approval of attorneys' fees in an amount not to exceed one-third of the Gross Settlement Amount (currently at $83,333.33 based on the current Class Size) and reimbursement of costs not to exceed $25,000 in litigating this case. (*Id.* at 5.)

**D.     Incentive Payment**

The Settlement Agreement provides that Plaintiff's counsel will petition the Court for approval of an incentive award for Plaintiff in an amount not to exceed $5000. (*Id.* at 6.)

**E.     Payment to the California Labor and Workforce Development Agency**

The Settlement Agreement requires Plaintiff to apply to the Court for its approval of payments to the California Labor and Workforce Development Agency ("LWDA") pursuant to PAGA. (*Id.*) The parties agreed to allocate $25,000 of the Gross Settlement Agreement for PAGA penalties, $18,750 (75% of $25,000) of which shall be paid to the LWDA, with the remaining $6250 to be distributed to the settling class members on a pro rata basis. (*Id.*)

**F.     Releases**

The Settlement Agreements provides that all class members other than those who opted-out will release Defendant from:

> All claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, that were or could have been asserted in the lawsuit, whether in tort, contract, statute, rule, ordinance, order, regulation, or otherwise, for violation of California Labor Code

§ 226, including claims for statutory penalties and civil penalties pursuant [to] PAGA.

(*Id.* at 13.) Further, the Settlement Agreement provides that the settling class members waive and relinquish the rights and benefits of California Civil Code section 1542. (*Id.*)

**G.     Notice to Settlement Class**

Within fourteen (14) days of this Order, Defendant will provide the Administrator with the contact information of the potential class members. (*Id.* at 6.) Within thirty (30) days of this Order, the Administrator will provide notice of the settlement to the potential class members and an exclusion form (collectively, the "Notice") via first class U.S. Mail. (*Id.* at 6–7; Ex. A (the "Notice").) The Settlement Agreement details the Administrator's method of updating addresses, mailing the Notice, and managing mail returned as undeliverable. (*Id.* at 7.) The Administrator's costs and expenses in carrying out its duties are capped at $30,000. (*Id.* at 5.)

Defendant also submits a proposed notice with the Motion. (*Id.* Ex. A.) The Notice informs the potential class members that they do not need to take any actions to receive their share of the settlement proceeds in bold, capital letters. (*Id.* at 1.) The notice also informs class members how they may object to the settlement or request exclusion from the class. (*Id.* at 5–6.) Objecting class members who wish to appear at the final approval hearing must indicate their intent in their objection or they will waive their right to appear and object in person. (*Id.* at 5.) As for exclusion, should more than 15% of the class members request to be excluded from the class, Defendant may cancel and void the Settlement Agreement. (Settlement Agreement 4.)

## IV.     ANALYSIS

The Court must first address whether the class may be provisionally certified for settlement purposes only, then evaluate the fairness, adequacy, and reasonableness of the proposed settlement, and finally review the adequacy of the proposed Notice.

**A.     Class Certification**

Class certification is a prerequisite to preliminary settlement approval. Class

certification is appropriate only if each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997). Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Next, the proposed class must meet at least one of the requirements of Rule 23(b)(3): (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and/or (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention." *Amchem*, 521 U.S. at 620.

### 1. Rule 23(a) Requirements

The proposed class meets all of the 23(a) factors. First, it is sufficiently numerous. While "[n]o exact numerical cut-off is required," "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). There are currently 2323 potential members of the settlement class, and joinder of these individuals would be impracticable. Thus, this class is sufficiently numerous.

Next, the claims of the potential class members demonstrate common questions of fact and law. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("commonality only requires a single significant question of law or fact."). Plaintiff alleges that (1) all potential class members were subject to Defendant's wage statement policies; (2) the policy resulted in Labor Code violations; (3) Defendant's conduct was intentional; and (4) the class members are entitled to statutory and civil penalties.

(FAC ¶ 26.) At this juncture, no discernable individualized issues appear to exist which might detract from the common questions of fact and law. As such, the class meets this requirement.

Plaintiff also meets the typicality requirement. Typicality in this context means that the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff's claims arise out of the same circumstances as those of the other class members, specifically whether Defendant failed to provide accurate itemized wage statements. (*See generally* FAC.) Thus, Plaintiff shares material common factual and legal issues with the other settlement class members and satisfies typicality.

Finally, Plaintiff and his counsel satisfy the adequacy requirement for representing absent class members. This requirement is met where the named plaintiff and his counsel do not have conflicts of interest with other class members and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. Plaintiff and his counsel have vigorously pursued this case and represent that Plaintiff's interests are coextensive with the interests of the class. (Smith Decl. ¶ 27.) There is no evidence in the record to suggest that the class representative or counsel have a conflict of interest with other class members. Counsel appears well-qualified as they are experienced with wage-and-hour class action litigation. (*Id.* ¶¶ 3–6.) In this action, they have engaged in thorough investigation, discovery, and negotiations on behalf of the class. (*Id.* ¶¶ 9–30.) These facts support counsel's adequacy and vigorous representation of the putative class. As such, the proposed class and its representative satisfy the Rule 23(a) requirements. For the same reasons, Plaintiff's counsel is appointed to serve as Class Counsel for the purposes of this settlement as counsel has the requisite experience, knowledge, qualifications, and resources to represent the class members in this litigation. *See* Fed. R. Civ. P. 23(g)(1)(A).

### 2. *Rule 23(b)(3) Requirements*

Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, for the purposes of settlement, questions of law or fact common to class members predominate over individualized questions because the issue at stake— whether all members of the class received accurate itemized wage statements thereby entitling Plaintiff and the class to receive damages in the form of penalties—are common to the class. Further, a class action appears to be a far superior method of adjudicating the class members' claims. The overall claim that Defendant's wage statements violated state law as to all potential class members makes individual actions prone to inefficiency. The cost of litigation for all potential class members to bring individual actions would be inefficient, and the costs of litigation would dwarf any recovery.

As each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met, the class may be provisionally certified for settlement purposes.

### B.   Fairness of Settlement Terms

The Court must also consider whether the proposed settlement warrants preliminary approval. For preliminary approval, "the court evaluates the terms of the settlement to determine whether they are within a range of possible judicial approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal quotation marks and alterations omitted). A court may preliminarily approve a settlement and direct notice to the class if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp.

2d 1078, 1079 (N.D. Cal. 2007). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety"; a court may not "delete, modify or substitute" its provisions. *Id.*

The settlement negotiations appear fair and adequate and the proposed settlement terms appear to come within the range of possible judicial approval.

### 1. Adequacy of Negotiations

The Court is satisfied that settlement was the product of "serious, informed, non-collusive negotiations." *Spann*, 314 F.R.D. at 319. The parties thoroughly investigated their claims and engaged in discovery before participating in several months of settlement negotiations. (Smith Decl. ¶¶ 9, 11.) Plaintiff asserts that the settlement negotiations were done at arm's length and that Plaintiff considered the exposure analysis of continuing to litigate his claims. (Mot. 12; Smith Decl. ¶ 18–30.) Under these circumstances, the Court accepts that the settlement negotiations were adequate.

### 2. Settlement Terms

After carefully reviewing the terms of the settlement, the Court finds that the settlement does not unfairly give preferential treatment to any party and falls within the range of possible approval.

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal.

2004) (internal quotation marks omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

Here, as with most class actions, there is risk to both parties in continuing towards trial. The parties reached settlement only after conducting discovery and with numerous deadlines approaching, including: the motion for class certification, discovery motions, dispositive motions, as well as trial preparation. (Smith Decl. ¶ 20–21.) The settlement treats all members of a uniform class equally, awarding each class member with a pro rata share of the net settlement proceeds and a pro rata share of the PAGA penalties. Accordingly, the settlement does not unfairly favor any member, represents a compromise, and avoids uncertainty for all parties involved.

### 3. *Settlement Funds*

The Court notes no obvious deficiencies in the amount and allocations of settlement funds.

#### a. *Incentive Award*

The Motion seeks approval of an incentive award not to exceed $5000 for Joseph Saenz as Class Representative. (Mot. 2; Settlement Agreement 6.) "[D]istrict courts [should] scrutinize carefully [incentive] awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). In evaluating incentive awards, the court should look to "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

Mr. Saenz, as the lead plaintiff, assisted counsel with "gathering the evidence necessary to prosecute the class claims, maintained regular contact with counsel, and reviewed the Settlement [Agreement] to make sure it was fair to the class." (Smith Decl. ¶ 27.) As a $5000 incentive award is presumed reasonable, and as Plaintiff has sufficiently demonstrated that he adequately participated and represented the class in litigation, the Court finds that the incentive payment of $5000 is an appropriate amount to compensate Mr. Saenz for his efforts.

### b. Attorneys' Fees

The Motion seeks attorneys' fees in an amount not to exceed $83,333.33[2], or one-third of the settlement fund. (Mot. 1.) "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Twenty-five percent recovery is the benchmark for attorneys' fees, although courts in the Ninth Circuit have found upward departures to fall within the acceptable range. *See id.* at 942 (noting 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (upward departure acceptable when expressly explained). Further, "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942.

Counsel are experienced wage-and-hour class action litigators and the fee request, while high, falls within the range identified as potentially acceptable in the Ninth Circuit. Accordingly, preliminary approval is appropriate, though final approval will depend on counsel providing sufficient information to support the requested award.

---

[2] There appears to be a typo in the Settlement Agreement, which references the amount as $83,3333.33. (Settlement Agreement 5.)

### *4.  Release of Claims*

"Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability." *Spann*, 314 F.R.D. at 327; *see also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted).

Plaintiff indicates that the release is "narrowly-tailored [and] limited to the wage and hour claims pled or that could have been pled based on the facts alleged in the Complaint."  (Mot. 3.)  Thus, while the release is broad in that it releases claims both known and unknown, the released claims are appropriately limited to the factual predicate of this action.

## C.  Sufficiency of Notice

To find notice to absent class members sufficient, the Court must analyze both the type and content of the notice.  Here, the Court finds that the notice is sufficient.

### *1.  Type of Notice*

"[T]he court must direct to class members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  The parties agree that the Administrator will distribute notice to all potential class members.  (Settlement Agreement 6–8.)  The contact information for potential class members is available through Defendant's records, and the Administrator will send notice via U.S. Mail.  (*Id.* at 6.)  Prior to mailing the notices, the Administrator will use the U.S. Postal Service National Change of Address List to verify the accuracy of the addresses.  (*Id.* at 7.)  The Administrator shall perform skip traces to any notices that are returned within five days

of its receipt. (*Id.*) The Administrator will inform Defendant's counsel of the identity of all class members who were sent the Notice as a result of a skip trace and whose Notice was again returned. (*Id.*) The class members will have sixty days from the date the Administrator mails the notice to request exclusion or object to the Settlement Agreement. (*Id.* at 6–7.)

The Court finds the procedures for notice sufficient and the most practicable under the circumstances.

### 2. Content of Notice

Class notice must state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted). The notice "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

The Court finds the Notice contains all the information required under the Federal Rules. The Notice includes the basics of the case, the class definition, and the class action's claims. (Notice 1.) The Notice explains the procedure for opting out and objecting to the settlement. (*Id.* at 3.) The Notice indicates that to participate and receive an award, a class member need not do anything. (*Id.* at 1.) Further, the Notice provides that remaining a member of the class and receiving a payment will result in

the class member giving up his/her claims and being bound by the Settlement Agreement. (*Id.* at 1–2.)

## V. CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Class Action Settlement. The final approval hearing shall be held on **July 29, 2019 at 1:30 p.m.** at the United States Courthouse, 350 West First Street, Courtroom 5D, Los Angeles, CA 90012.

**IT IS SO ORDERED.**

March 27, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**