**AEGIS LAW FIRM, PC**
SAMUEL A. WONG, State Bar No. 217104
swong@aegislawfirm.com
KASHIF HAQUE, State Bar No. 218672
khaque@aegislawfirm.com
JESSICA L. CAMPBELL, State Bar No. 280626
jcampbell@aegislawfirm.com
SAMANTHA SMITH, State Bar No. 233331
ssmith@aegislawfirm.com
9811 Irvine Center Drive, Suite 100
Irvine, California 92618
Telephone: (949) 379-6250
Facsimile:  (949) 379-6251

Attorneys for Plaintiff Joseph Saenz,
individually and on behalf of all others similarly situated

*(Additional counsel of record on following page)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH SAENZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>LOWE'S HOME CENTERS, LLC, a North Carolina limited liability company; and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. 2:17-CV-08758-ODW-PLA<br><br>*Assigned for All Purposes to:*<br>*Hon. Otis D. Wright*<br>*Courtroom No. 5D*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        July 29, 2019<br>Time:        1:30 p.m.<br>Location:    Courtroom 5D |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 29, 2019, at 1:30 p.m., in Room 5D at the First Street Courthouse, located at 350 West First Street, Los Angeles, CA 90012. Representative Plaintiff Joseph Saenz ("Plaintiff"), and Plaintiff's Counsel will and hereby do move this Court for final approval of the proposed Class Action Settlement Agreement ("Settlement") with Defendant Lowe's Home Centers, LLC ("Defendant"). Specifically, Plaintiff moves the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order finally approving the Settlement as fair, reasonable, and adequate.

This Motion is made on the grounds that the Settlement is fair, adequate, and reasonable given the relative strengths and weaknesses of the claims and defenses; the risks, expense, complexity and likely duration of further litigation; the amount offered in settlement; the experience and views of counsel; and the public policy in favor of quieting litigation.

This Motion is based upon the accompanying (1) Memorandum of Points and Authorities, (2) the Declaration of Samantha A. Smith, (3) the Declaration of Nathalie Hernandez, the exhibits attached to the foregoing declarations, and such other oral arguments and documentary evidence as may be presented to the Court at the hearing of this Motion.

Dated: July 1, 2019                          **AEGIS LAW FIRM, P.C.**

                                             By:  /s/ Samantha A. Smith
                                                  _____
                                                  Samantha A. Smith
                                                  Attorneys for Plaintiff Joseph Saenz

NOTICE OF MOTION AND MOTION FOR ORDER GRANTING
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.  SUMMARY OF THE LITIGATION.................................................2

III. SUMMARY OF THE SETTLEMENT TERMS ...............................4

    A.  Composition of the Settlement Class........................................4

    B.  Settlement Consideration .........................................................4

    C.  Formula for Calculating Settlement Payments ..........................5

    D.  Class Member Releases ............................................................5

IV.  THE NOTICE AND SETTLEMENT ADMINISTRATION PROCESS

     WAS COMPLETED PURSUANT TO THE COURT'S ORDER....................6

V.   ARGUMENT...................................................................................7

    A.  The Standard for Final Approval Has Been Met.........................7

    B.  Class Counsel Conducted a Thorough Investigation of the Factual

        And Legal Issues........................................................................9

    C.  The Settlement Was Achieved After Evaluating the Strengths of

        Plaintiff's Case and the Risks, Expenses, Complexity, and Likely

        Duration of Further Litigation ..................................................10

    D.  The Settlement Was Reached Through Arm's-Length Bargaining in

        Which the Parties Were Represented by Experienced Counsel .................12

    E.  The Class Has Responded Positevely to the Settlement.............................13

    F.  The Proposed PAGA Settlement Is Reasonable .........................................14

VI.  CONCLUSION...............................................................................15

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4 *7-Eleven Owners for Fair Franchising v. Southland Corp.*,
5    85 Cal. App. 4th 1135 (2000) ..............................................................13

6 *Churchill Village, LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...............................................................13

7 *Clesceri v. Beach City Investigations & Protective Servs.*,
8    2011 U.S. Dist. LEXIS 11676 (C.D. Cal. Jan. 27, 2011) ....................10

9 *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*,
    30 Cal.4th 1037 (2003) ........................................................................10
10

11 *Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................8
12

13 *Hopson* v. *Hanesbrands Inc.*,
    2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) .....................14
14

*Kullar v. Foot Locker Retail, Inc.*,
    168 Cal. App. 4th 116 (2008) ...............................................................10
15

16 *Lane v. Facebook, Inc.*,
    2010 U.S. Dist. LEXIS 24762 (N.D. Cal. 2010) .................................10
17

18 *Raychem Corp. v. Fed. Ins. Co.*,
    853 F. Supp. 1170 (N.D. Cal. 1994) ....................................................11
19

*Staton v. Boeing Co*.,
    327 F.3d 938 (9th Cir. 2003) .................................................................9
20

21 *In re Volkswagon "Clean Diesel" Mktg., Sales Practices, &Prods. Liab. Litig.*,
    2016 WL 4010049 (N.D. Cal. July 26, 2016)......................................13

22 **Statutes**

23 California Code of Civil Procedure § 382 ..................................................2

24 California Code of Civil Procedure § 1542 ................................................6

25 California Labor Code §226 ...............................................................5, 11

26 California Labor Code § 2698, *et seq.* ............................................. *passim*

27 California Labor Code § 2699(e)(2) .......................................................11

28

2

California Labor Code § 2699(l)(2) ..........................................................................15

Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (d), 1453, and 1711-1715 ....................................2

**Other Authorities**

Fed. R. Civ. Proc. 23(a) .............................................................................................8

Fed. R. Civ. Proc. 23(e) .....................................................................................1, 7, 8

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On March 27, 2019, the Court granted preliminary approval of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") executed between Plaintiff Joseph Saenz ("Plaintiff") and Defendant Lowe's Home Centers, LLC ("Defendant") (collectively, Plaintiff and Defendant hereinafter referred to as the "Parties"). (*See* Order Granting Preliminary Approval ["Preliminary Approval Order")], ECF No. 39.) After almost two years of litigation, Plaintiff now seeks final approval of this non-reversionary Settlement of $250,000 for 2,320 Class Members. An objective evaluation of the Settlement confirms that the requirements of Fed. R. Civ. Proc. 23(e) have been satisfied. Further, the relief negotiated on behalf of the Class is fair, reasonable, and adequate in light of the risks of continued litigation, supporting Plaintiff's request that the Court grant an order finally approving the Settlement.

The Preliminary Approval Order approved distribution of the Notice of Class Action Settlement and Final Approval Hearing ("Notice") by ILYM Group, Inc., the Settlement Administrator. (*See* Preliminary Approval Order, § III.G., ECF No. 39.) Class Members were given 60 days to opt out or object to the Settlement ("Response Deadline"). (*See* Declaration of Samantha A. Smith in Support of Plaintiff's Motion for Order Granting Final Approval of Class Action Settlement ["Smith Decl."] ¶ 22, Ex. 1 ["Settlement"] § 5(d).) Now that the Response Deadline has passed, Plaintiff is pleased to report the following: (1) only 14 out of the 2,320 Class Members opted out of the Settlement (.60% of the Class); (2) zero Class Members objected to the Settlement; (3) the entire Net Settlement Amount will be disbursed to 2,306 Settlement Class Members on a pro rata basis; and (4) the average payment to Settlement Class Members that did not opt out is approximately $50.89. (Declaration of Nathalie Hernandez, ILYM Group, Inc., in Support of Motion for Final Approval of Class Action Settlement ["Hernandez Decl."], ¶¶ 11-14.)

As discussed below, while Plaintiff is confident that his claims are certifiable and

have merit, there are significant risks that the Court could deny certification and/or that Defendant could prevail on the merits. (Smith Decl. ¶¶ 19-21.) The Settlement was negotiated by the Parties at arm's length after several months of direct discussions between the Parties. (*Id.* at ¶ 9.)

By resolving the dispute now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at or before trial. (*Id.* at ¶¶ 19, 20.) Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Class Members, Plaintiff respectfully requests that the Court grant this Motion for Order Granting Final Approval of Class Action Settlement, enter a judgment, and retain jurisdiction to enforce the Settlement.

## II.    SUMMARY OF THE LITIGATION

The Settlement aims to resolve a consolidated putative wage and hour class and representative action lawsuit against Defendant.

On November 1, 2017, Plaintiff filed a putative class action, pursuant to California Code of Civil Procedure § 382, against Defendant in the Superior Court of the State of California, County of Los Angeles Superior Court (Case No. BC682111). (Smith Decl. ¶ 3.) On January 17, 2018, Plaintiff filed a First Amended Complaint adding a cause of action pursuant to California's Private Attorneys General Act of 2004, codified at California Labor Code § 2698, *et seq.* ("PAGA"). (*Id.* at ¶ 4.) On December 5, 2017, Defendant removed *Saenz* to the federal court, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (d), 1453, and 1711-1715 ("CAFA"). (*Id.* at ¶ 5; *see* Notice of Removal, ECF No. 1.) Plaintiff is represented by Aegis Law Firm, PC. (Smith Decl. ¶ 3.)

After the removal of the matter, Plaintiff and Defendant engaged in an initial round of written discovery with each party producing documents pursuant to requests for production. Plaintiff's counsel identified through investigation that the common questions raised in Plaintiff's FAC could be resolved using the information gathered and the

information expected to be obtained, including, but not limited to, Defendant's time and payroll records and Defendant's class-wide policies and practices. Through discovery, Plaintiff sought, among other things, putative class members' time and pay records and Defendant's class-wide policies and practices. (*Id*. at ¶ 6.)

The Parties met and conferred regarding discovery issues and the production of requested documents, and Defendant produced information and documents necessary for damages analysis. The Parties engaged in significant discussions regarding the merits of the case and exchanged legal research and arguments regarding the merits of the claims. The information Defendant provided was sufficient information for Plaintiff to calculate Defendant's potential exposure at this stage of the litigation. After exchanging discovery and the data necessary to begin settlement discussions, the Parties engaged in several months of direct settlement negotiations. (*Id*. at ¶ 7.)

On or about August 16, 2018, the parties reached a tentative settlement after several months of direct negotiations between the Parties, providing cash reimbursement to participating class members on a pro rata basis. (*Id*. at ¶ 9.)

On November 20, 2018, Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement, including declarations of Class Counsel in support thereof. (*Id*. at ¶ 10; *see* Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, ECF No. 37.)

In accordance with the Settlement, Defendant submitted an Amended Class Action Fairness Act Notice of Proposed Settlement to the Attorneys General on January 25, 2019. (Smith Decl., Ex. 3.)

On March 27, 2019, this Court issued an Order Granting Preliminary Approval, which, *inter alia*, provisionally certified the Class for settlement purposes, designated Plaintiff as Class Representative, designated Plaintiff's Counsel as Class Counsel, authorized retention of ILYM Group, Inc. as the Settlement Administrator, approved the Notice of the Settlement and proposed notice procedures, and set the Final Approval Hearing for July 29, 2019. (Smith Decl. at ¶ 11; *see also* Preliminary Approval Order, ECF

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

No. 39.)

In accordance with the terms of the Settlement, Plaintiff filed his Motion for Award of Attorneys' Fees, Costs, and Class Representative Incentive Award on May 24, 2019. (Smith Decl. at ¶ 12; ECF No. 40.)

## III.  SUMMARY OF THE SETTLEMENT TERMS

### A.  Composition of the Settlement Class

The Class is comprised of all current and former hourly-paid employees who work or worked for Defendant from July 15, 2016 to January 31, 2018, who received a wage statement at the time of their in-store termination and who also worked overtime in the period covered by that wage statement. (Smith Decl. at ¶ 13; Settlement, p.3 at § 5(a).) The Settlement Class excludes employees that submitted a timely and valid request for exclusion or employees that previously released the claims subject to the Settlement under a separate agreement. (*Id*.)

### B.  Settlement Consideration

The Settlement commits Defendant to a gross non-reversionary amount of $250,000 (the "Gross Settlement Amount"). (Smith Decl. at ¶ 14; Settlement, § 6.) The "Net Settlement Proceeds" is the portion of the Gross Settlement Amount that is available for distribution to Settlement Class Members after the deduction of Court-approved attorneys' fees and costs, Class Representative Incentive Award, settlement administration expenses, and payment to the LWDA of $18,750 (i.e., 75% of the $25,000 PAGA Allocation) for the release of PAGA claims for civil penalties, and Defendant's employer-side payroll taxes and other required withholdings. (Settlement, § 9.)

The Settlement permits Plaintiff to request an award of attorneys' fees of up to one-third of the Gross Settlement Amount as well as reasonable litigation costs supported by declarations of Plaintiff's' Counsel.[1] (*Id.* at § 6(b).) If the Court awards less than these amounts, the residual will be added to the Net Settlement Proceeds. (*Id.*) The non-

---

[1] Plaintiff filed his Motion for Award of Attorneys' Fees, Costs, and Class Representative Incentive Award on May 24, 2019 (ECF No. 40).

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  reversionary nature of the Gross Settlement Amount means that 100% of the Net
2  Settlement Proceeds will be paid to Class Members who did not opt out, and without the
3  need to submit claims to receive their Individual Settlement Payment. (*Id.* at §§ 6(a)(4),
4  9(c).)

### C.    Formula for Calculating Settlement Payments

6  The Net Settlement Proceeds will be allocated on a pro rata basis to all Settlement
7  Class Members that did not opt out, i.e., an equal amount will be allocated to each
8  participating Settlement Class Member (estimated to be $48.20). (*Id.* at § 9(c)(1);
9  Hernandez Decl. ¶14.) Each Settlement Class Member (regardless of whether he or she
10  opted out) will also receive a pro rata share of the PAGA Allocation less the LWDA
11  Payment (estimated to be $2.69). (*Id.*) There will be no reversion of the Gross Settlement
12  Amount to Defendant. The Individual Settlement Awards will be denominated as non-
13  wages (i.e., penalties) that will be reported to the IRS on Form 1099. (*Id.* at § 9(c)(3).)

### D.    Class Member Releases

15  The release is narrowly tailored and limited to the wage and hour claims pled or
16  that could have been pled based on the facts alleged in the complaint. (Smith Decl. ¶ 17.)

17  Specifically, upon Final Approval, the Settlement Class Members will release
18  Defendant and each of its respective past, present and future owners, stockholders, all
19  present and former parent corporations, subsidiaries, officers, directors, shareholders,
20  employees, agents, principals, heirs, representatives, accountants, attorneys, auditors,
21  consultants, insurers and re-insurers, and their respective successors and predecessors in
22  interest, each of their company-sponsored employee benefit plans of any nature (including,
23  without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans)
24  and all of their respective officers, directors, employees, administrators, fiduciaries,
25  trustees and agents, and any individual or entity which could be jointly liable with
26  Defendant (the "Released Defendants") from all claims, demands, rights, liabilities, and
27  causes of action of every nature and description whatsoever, whether known or unknown,
28  that were or could have been asserted in the lawsuit, whether in tort, contract, statute, rule,

ordinance, order, regulation, or otherwise, for violation of California Labor Code §226, including claims for statutory penalties and civil penalties pursuant PAGA ("Released Claims"). (Settlement, § 18(a)(b).) The parties also agree to a California Code of Civil Procedure § 1542 waiver. (Smith Decl. ¶ 17; *id.* at § 18(c).)

Accordingly, the releases in the Settlement are narrowly tailored to the claims alleged, or those that could have been alleged upon the same facts. (Smith Decl. ¶ 17.) The Court approved this release in its Preliminary Approval Order. (*See* Preliminary Approval Order, ECF No. 39.)

## IV. THE NOTICE AND SETTLEMENT ADMINISTRATION PROCESS WAS COMPLETED PURSUANT TO THE COURT'S ORDER

As authorized by the Court's Preliminary Approval Order, the Parties engaged ILYM Group, Inc. to provide settlement administration services. (Settlement, § 2.)

ILYM Group, Inc. performed the following duties to date: (1) finalized the Notice for mailing; (2) reviewing the Class contact information; (3) conducted a National Change of Address search and updating addresses prior to mailing the Notice; (4) printed and mailed the Notice; (5) conducted address skip traces on returned Class Notices with no forwarding address; (6) re-mailed Notices to previously undeliverable addresses; and (7) received and processed requests for exclusion from the Settlement. (Hernandez Decl. ¶¶ 3-15.)

ILYM Group, Inc. will perform the following duties if and after the Court enters an order granting final approval of the Settlement: (1) calculate the Individual Settlement Awards for each Settlement Class Member; (2) distribute tax forms; (3) process and mail the Individual Settlement Awards, Class Representative Incentive Award, Attorneys' Fees and Costs, and the LWDA for payment of civil penalties pursuant to the PAGA component of the Settlement; (4) process and mail tax forms to the appropriate state and federal taxing authorities; (5) handle the distribution of any unclaimed funds; and (6) other tasks as the Parties mutually agree or the Court orders ILYM Group, Inc. to perform. (Hernandez Decl. ¶ 15.)

The Class Notice summarized the principal terms, provided Class Members with an estimate of how much they would receive if the Settlement is finally approved, and advised Class Members how to opt-out of the Settlement and how to object to the Settlement. (*See* Settlement, Ex. A ["Class Notice"].) Separately, Defendant's Counsel provided ILYM Group, Inc. with the Class list containing their last known addresses. (Hernandez Decl. at ¶ 5.) The finalized Class List contained 2,320 Class Members, and ILYM Group, Inc. updated the mailing addresses. (*Id*.)

ILYM Group, Inc. mailed the Class Notices on April 26, 2019 via U.S. first class mail. (*Id*. at ¶ 7.) Based on the date of mailing, Class Members had until June 25, 2019, to submit objections, disputes, and/or requests for exclusion. (*Id*. at ¶ 11.) Only 14 of the 2,320 Class Members opted out of the Settlement, and none of the remaining Class Members objected to the Settlement, resulting in a 99.40% participation rate. (*Id*. at ¶ 13.) Forty-nine Notices were undeliverable with no available forwarding address (*Id*. at ¶ 10), but any checks not cashed within 180 days of issuance will be transmitted to the California Department of Industrial Relations Unpaid Wage Fund in the name of the Settlement Class Member so that such individuals will have the opportunity to claim their payments. (*See* Settlement, § 16(b).)

## V.    ARGUMENT

### A.    The Standard for Final Approval Has Been Met

A class action may only be settled, dismissed, or compromised with the Court's approval. Fed. R. Civ. Proc. 23(e). The process for court approval of a class action settlement is comprised of three principal stages.

(1)    Preliminary Approval. The proposed settlement agreement is preliminarily reviewed by the Court for fairness, adequacy, and reasonableness. If the Court believes the settlement falls within the range of reasonableness, such that proceeding to a formal fairness hearing is warranted, the Court orders notice of the settlement disseminated to the class. *See* Manual for Complex Litigation § 21.632

7

(4th ed. 2004).

(2)    <u>Notice Procedures</u>: Notice of the settlement is disseminated to the class, giving class members an opportunity to object to the settlement's terms or preserve their right to bring an individual action by opting out of the settlement. *See id.* § 21.633.

(3)    <u>Final Approval</u>. A formal fairness or final approval hearing is held by the Court, at which time class members can be heard regarding the settlement and further evidence and arguments concerning the fairness, adequacy, and reasonableness of the settlement is presented. Following the hearing, the Court decides whether to approve the settlement and enter a final order and judgment. *See id.* § 21.634.

The first two steps have been completed. (*See generally* Preliminary Approval Order, Hernandez Decl.) The Court has preliminarily reviewed the proposed settlement for fairness and found it to be within the range of reasonableness meriting court approval. (*See* Preliminary Approval Order, ECF No. 39.) In addition, the Administrator notified Class Members of the proposed Settlement and the upcoming fairness hearing as directed by the Court. (*See generally* Hernandez Decl.) Plaintiff now requests the Court grant final approval of the proposed Settlement.

The decision whether to approve the proposed Settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998). Rule 23(e) of the Fed. R. Civ. Proc. requires that the court find a class settlement to be fair, reasonable and adequate before entering final approval. Courts balance several factors in determining whether a settlement is fair, adequate and reasonable, in compliance with Fed. R. Civ. Proc. 23(a), such as "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the

1  presence of a governmental participant; and the reaction of the class members to the

2  proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal

3  citation and quotation marks omitted).

4       These factors, discussed below, confirm that the Settlement is fair, reasonable, and

5  adequate for Class Members. The Settlement provides considerable value, and Class

6  Members need not bear the risk and delay associated with trial proceedings to obtain these

7  benefits. (Smith Decl. ¶ 20.) Further, the Settlement has been met with substantial support

8  Class Members as evidenced by the 99.40% participation rate. (Hernandez Decl. ¶ 13.)

9       **B.    Class Counsel Conducted a Thorough Investigation of the Factual and**

10           **Legal Issues**

11      The Settlement is the product of informed negotiations following extensive

12  investigation by Class Counsel. (Smith Decl. ¶¶ 6-9.) As mentioned above, Plaintiff's

13  counsel identified through investigation that the common questions raised in Plaintiff's

14  FAC could be resolved using the information gathered and the information expected to be

15  obtained through discovery, including, but not limited to, Defendant's time and payroll

16  records and Defendant's class-wide policies and practices. Through discovery, Plaintiff

17  sought, among other things, putative class members' time and pay records and

18  Defendant's class-wide policies and practices. (*Id.* at ¶ 6.)

19      The Parties met and conferred regarding discovery issues and the production of

20  requested documents and Defendant produced information and documents necessary for

21  damages analysis. The Parties engaged in significant discussions regarding the case and

22  exchanged legal research and arguments regarding the merits of the claims. The

23  information Defendant provided was sufficient information for Plaintiff to calculate

24  Defendant's potential exposure at this stage of the litigation. Plaintiff faced several hurdles

25  from Defendant, including discovery objections and a prior settlement that reduced the

26  size of the putative class. (Smith Decl. at ¶ 7; *see Dutt v. Lowe's HIW, Inc.*, Los Angeles

27  Superior Court, Case No. BC553191 (settlement approved and judgment entered on Feb.

28  19, 2016). As a result, Plaintiff's Counsel anticipated a prolonged legal battle, but the

1  effort, skill, research, and investigation in developing theories of liability not previously

2  considered by Defendant were critical in reaching an agreement to resolving and

3  obtaining a settlement for the Class.

4          Plaintiff's Counsel conducted a thorough analysis of the claims, analyzed

5  Defendant's employment policies and practices, spoke to Defendant's counsel on many

6  occasions regarding the legal theories, exchanged research and analysis on these theories,

7  and engaged in several months of direct settlement negotiations. (Smith Decl. ¶¶ 6-9.) The

8  extensive document and data exchange allowed Class Counsel to appreciate the strengths

9  and weaknesses of the alleged claims against the benefits of the proposed Settlement. (*Id*.)

10 Through persistent and targeted discovery, Class Counsel effectively pushed the case

11 toward resolution, which ultimately yielded the instant Settlement. (*Id*.)

12      **C.    The Settlement Was Achieved After Evaluating the Strengths of**

13              **Plaintiff's Case and the Risks, Expense, Complexity, and Likely**

14              **Duration of Further Litigation**

15          In considering the complexity, expense and likely duration of the litigation, courts

16 weigh the benefits of the settlement against the expense and delay involved in achieving

17 an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc.,* 2010 U.S.

18 Dist. LEXIS 24762, *19 (N.D. Cal. 2010); *see Kullar v. Foot Locker Retail, Inc.,* 168 Cal.

19 App. 4th 116, 129 (2008) (The trial court "bears the responsibility to ensure that the

20 recovery represents a reasonable compromise, given the magnitude and apparent merit of

21 the claims being released, discounted by the risks and expenses of attempting to establish

22 and collect on those claims by pursuing the litigation."). However, "[j]udicial policy

23 favors settlement in class actions, as substantial resources can be saved by avoiding the

24 time, cost, and rigors of formal litigation." *Clesceri v. Beach City Investigations &*

25 *Protective Servs.*, 2011 U.S. Dist. LEXIS 11676, at *22 (C.D. Cal. Jan. 27, 2011).

26          The policy under California law that favors and encourages settlement of class

27 actions and other complex cases applies with particular force here. California jurists

28 recognize "an overriding public policy favoring settlement of class actions." *Ferguson*

*v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal.4th 1037, 1054 (2003) (Kennard, J., concurring) (*citing Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("public policy favor[s] the compromise and settlement of disputes")); *see also Raychem Corp. v. Fed. Ins. Co.,* 853 F. Supp. 1170, 1177 (N.D. Cal. 1994) (recognizing public policy favoring settlement of class action lawsuits). Employment cases (including wage and hour cases) can be expensive and time-consuming to prosecute. That this is a class action further amplifies the economies of time, effort and expense achieved by this Settlement.

Employment cases (including wage and hour cases) can be expensive and time-consuming to prosecute. That this is a class action further amplifies the economies of time, effort and expense achieved by this Settlement. Based on review of documentary evidence and data produced by Defendant both formally and informally in the course of litigation and settlement negotiations, Plaintiff's Counsel assessed the potential value of the class claims being released by the proposed Settlement. (Smith Decl. ¶¶ 19-26.)

Plaintiff estimated that the damages and penalties for the wage statement violation could have reached over $650,000. (*Id*. at ¶ 23.) Due to the risks inherent at the class certification and liability-finding stages, Plaintiff discounted the value of potential penalties in light of probable defenses. (*Id.*) Specifically, Defendant could argue that Plaintiff could not show that Class Members suffered an "injury" as a result of wage statement violations required by Labor Code § 226. (*Id.*)

Importantly, Plaintiff discounted the value of the penalties on the belief that the Court might have exercised its discretion to reduce the PAGA penalties to the extent it found the penalties unjust, arbitrary and oppressive, or confiscatory. *Id.* at ¶ 24; s*ee* Labor Code § 2699(e)(2). Notably, there are very few California appellate cases discussing PAGA issues. Smith Decl. ¶ 24. Based on these considerations, the Settlement allocated $25,000 from the Gross Settlement Amount for the settlement of claims for civil penalties under PAGA. *Id.*; *see* Settlement, § 6(d).

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

These damages estimates were extremely liberal and assumed the best-case scenario if the parties were to continue to litigate this matter. (Smith Decl. ¶ 26.) Plaintiff's Counsel weighed the total possible Class recovery reflected above against many risk factors (*see* Smith Decl. ¶ 21), including:

- The great discretion afforded to trial courts in electing to grant or deny class certification, meaning it is entirely possible that this Court would deny certification of the proposed classes, resulting in <u>no recovery</u> whatsoever for the unnamed Class Members;
- Defendant's likely argument that the case is not amenable to class treatment because the vast majority of the Class has entered into valid arbitration agreements with enforceable class action waivers;
- Defendant's likely argument that Plaintiff and all of its other current and former employees in California receive, and have received, wage statements that comply with California law; and
- Defendant's likely argument that that Plaintiff's PAGA Claim can be tried in a manageable manner that comports with due process.

When weighed against the tremendous uncertainty of further litigation and the potential for the Class to receive nothing or wait through years of litigation and/or appeals, Class Members are far better served by the proposed Settlement than further and protracted litigation. (Smith Decl. ¶¶ 19-26.)

### D. The Settlement Was Reached Through Arm's-Length Bargaining in Which the Parties Were Represented by Experienced Counsel

As discussed above, the Settlement is the result of arm's-length negotiations by experienced counsel. (Smith Decl. ¶¶ 6-9.) After some initial discovery and realizing that a previous settlement significantly limited the size and scope of the Class, the Parties agreed to work together towards resolution. Rather than spend the time and money on a mediator, the Parties agreed to participate in direct negotiations to settle the case. (*Id.*) The negotiations were adversarial and effective. (*Id.*) Plaintiff's Counsel credit the effectiveness of the direct negotiations to the Parties' Counsel's comprehensive understanding of the disputed issues and their ability to convey the strengths and weaknesses of the claims and defenses in light of the risks of lengthy, uncertain, and

expensive litigation. (*Id*.) After the material terms were agreed upon, the Parties spent the next several months drafting and negotiating the long-form Settlement. (*Id*.) Ultimately, the Settlement was finalized and mutually executed in November 2018. (*Id.*)

At all times, the Parties' negotiations were adversarial and non-collusive. (*Id*.)

As this Settlement is the "result of arm's-length negotiations by experienced Class Counsel [it] is entitled to 'an initial presumption of fairness.'" *In re Volkswagon "Clean Diesel" Mktg., Sales Practices, &Prods. Liab. Litig.*, 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016) (internal citation omitted). There is no reason to doubt Class Counsel's experience, knowledge or commitment. Class Counsel are highly experienced and knowledgeable regarding complex federal and state wage and hour class actions, such as this action. (Smith Decl. ¶¶ 31-46.) Indeed, Class Counsel have handled many wage and hour cases on behalf of employees alleging claims just like those raised in this lawsuit. (*Id*.)

In sum, Class Counsel fully committed its resources to representing the Class, have the skill and expertise to do it properly, and will continue to do so whether or not the Settlement is approved. (Smith Decl. ¶ 30.) Class Counsel believe the Settlement provides a fair recovery for the Class, obtaining a $250,000 settlement. (*Id*.) Accordingly, Class Counsel obtained a favorable resolution on behalf of the Class based on their prior experience and investigation of this case, and therefore request that the Court grant final approval of the Settlement.

### E.    The Class Has Responded Positively to the Settlement

The Settlement Class' response demonstrates its support for this Settlement. Only 14 Class Members opted out and <u>zero</u> Class Members objected to the Settlement. (Hernandez Decl. ¶¶ 11-13.) Settlement Class Members that did not opt out will get a pro rata share the entire Net Settlement Proceeds plus the PAGA Allocation, with an average payment of $50.89. (*Id.* at ¶ 14.) A low number of opt-outs and objections is a strong indicator that a settlement is fair and reasonable. *See, e.g., Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566 (9th Cir. 2004) (affirming settlement approval where 45 of

approximately 90,000 notified class members objected and 500 opted out); *7-Eleven Owners for Fair Franchising v. Southland Corp.,* 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454 national class members elected to opt out [(1.5% of the entire Class)] and . . . [a] total of nine members . . . objected to the settlement"). The Class Members' response – both in the extremely low rate of opt-outs and lack of objectors – compares favorably to those cases and warrants final approval.

Likewise, the average Settlement Class Member recovery of $50.89 compares favorably to other wage and hour class action settlements for similar claims on behalf of hourly employees. *See, e.g., Palencia v. 99 Cents Only Stores,* No. 34-2010-00079619 (Sacramento County Super. Ct.) (average net recovery of approximately $80); *Doty v. Costco Wholesale Corp.,* Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.,* Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez* v. *Amadeus Salon, Inc.,* Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

Accordingly, the high participation rate, the low number of opt-outs, and no objections by Class Members supports a finding that the Settlement is fair and reasonable.

### F.    The Proposed PAGA Settlement Is Reasonable

Pursuant to the Settlement Agreement, $25,000 of the Gross Settlement Amount will be allocated to the resolution of the PAGA claim, of which 75% ($18,750) will be paid directly to the LWDA, and the remaining 25% ($6,250) distributed to the Settlement Class Members on a pro rate basis. (Settlement, § 9(c)(1).) This result was reached after good-faith negotiation between the Parties. (Smith Decl. ¶ 9.) Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson* v. *Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see also Nordstrom Com. Cases,* 186 Cal. App. 4th 576, 579 (2010) ("[T]rial

1  court did not abuse its discretion in approving a settlement which does not allocate any

2  damages to the PAGA claims.").

3      The PAGA component of the Settlement is the product of arm's-length negotiations

4  between counsel who are well versed in the intricacies of PAGA litigation and, more

5  importantly, wage and hour employment law. (Smith Decl. ¶¶ 25.) Class Counsel

6  conducted extensive formal and informal investigation and discovery into the claims at

7  issue and have assessed both the strengths and weaknesses of the claims and the risks of

8  continued litigation. (Smith Decl. ¶¶ 6-9.) The PAGA allocation is sufficient to satisfy the

9  PAGA purposes of punishment and deterrence, especially in light of the possibility that

10 Plaintiff might not prevail on proving their claims or that the Court could reduce the PAGA

11 award in its discretion. (Smith Decl. ¶¶ 6-9, 25.) Based on the foregoing, Class Counsel

12 strongly believe that the PAGA component of the Settlement appropriately reflects the

13 relative strengths of the Parties' respective claims and defenses, as well as the substantial

14 risks presented in continuing the litigation. (*Id.* at ¶ 26.) Pursuant to Labor Code §

15 2699(l)(2), Plaintiff's Counsel submitted a copy of the Settlement to the LWDA on

16 November 20, 2018, and have not received any comment or objection from the LWDA.

17 (*Id.* at ¶ 25, Ex. 2 [LWDA Confirmation Notice].) As such, the Court should approve the

18 PAGA allocation based on the finding that the allocation is the result of good faith, arm's-

19 length negotiation, and therefore fair, adequate, and reasonable.

20 **VI.  CONCLUSION**

21     The Parties have negotiated a fair, reasonable, and adequate settlement of a case that

22 provides relief that likely would never have been realized but for this class action.

23 Accordingly, final approval of the Settlement should be granted.

25 Dated: July 1, 2019         **AEGIS LAW FIRM, P.C.**

26     By: /s/ Samantha A. Smith

27     Samantha A. Smith

28     Attorneys for Plaintiff Joseph Saenz