O

# United States District Court
# Central District of California

| | |
|---|---|
| JOSEPH SAENZ, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC, a North Carolina limited liability company; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-08758-ODW (PLA)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL [41]; GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS & INCENTIVE AWARD [40]** |

## I. INTRODUCTION

This is a wage-and-hour class action against Defendant Lowe's Home Centers, LLC. Plaintiff Joseph Saenz, on behalf of himself and proposed class members, alleges that Defendant failed to provide accurate itemized wages statements to non-exempt employees in violation of California Labor Code section 226. The parties reached a settlement on behalf of the class, and the Court preliminarily approved the settlement and certified the class. (Order Granting Prelim. Approval ("Order"), ECF No. 39.) Plaintiff now moves for final approval of the class settlement and attorneys' fees among other costs. (Mot. for Att'y Fees, ECF No. 40; Mot. for Final Approval, ECF No. 41.) Defendant does not oppose, and no class members object.

For the reasons that follow, the Court **GRANTS** the Motion for Final Approval, and **GRANTS IN PART** the Motion for Attorneys' Fees, Expenses, Incentive Award, and Administrative Costs.

## II. BACKGROUND

On November 1, 2017, Plaintiff Joseph Saenz filed a class action lawsuit in the Superior Court of California for the County of Los Angeles against Defendant Lowe's Home Centers, LLC. (Notice of Removal Ex. 1 ("Compl."), ECF No. 1.) On December 5, 2017, Defendant removed the action to federal court pursuant to the Class Action Fairness Act. (Notice of Removal ¶ 7.) On January 17, 2018, Plaintiff filed a First Amended Complaint. (*See* First Am. Compl. ("FAC"), ECF No. 21.) Plaintiff brought the current lawsuit seeking to recover civil penalties, interest, attorneys' fees, costs, and expenses pursuant to the Private Attorneys General Act ("PAGA") for Defendant's failure to provide Plaintiff and the proposed class members with "itemized wage statements that accurately showed their gross and net wages earned, total hours worked, and all applicable hourly rates in effect, and the number of hours worked at each hourly rate in accordance with" California Labor Code section 226. (FAC ¶¶ 29, 36.) The FAC alleges claims for (1) failure to provide accurate itemized wage statements in violation of California Labor Code section 226 (FAC ¶¶ 37–43); and (2) representative claims under PAGA, California Labor Code section 2698, *et seq.* (FAC ¶¶ 44–53).

On March 27, 2019, the Court preliminarily approved the settlement and certified the following class: "All non-exempt employees of Defendant Lowe's Home Centers, LLC who received a wage statement at the time of their in-store termination during the Class Period and who worked overtime in the period covered by that wage statement." (*See generally* Order.) The Class Period is from July 15, 2016, to January 31, 2018. (Order 2.)

Additionally, the Court also appointed Plaintiff as class representative and Plaintiff's counsel as class counsel. (Order 6.) Following the Court's Order, the Administrator, ILYM Group, Inc. ("ILYM"), provided notice to the potential class

2

members as approved by the Court. (Decl. of Natalie Hernandez ("Hernandez Decl.") ¶¶ 4–10, ECF No. 41-2; Order 4.) Specifically, on April 26, 2019, ILYM distributed the Court-approved Notice Packet to the class list, which contained 2320 individuals. (Hernandez Decl. ¶ 7.) ILYM received 14 requests for exclusion, leaving a total of 2306 class members. (Hernandez Decl. ¶¶ 11, 13.)

### III. SETTLEMENT TERMS

The key provisions of the parties' Class Action Settlement Agreement ("Settlement Agreement") are set forth below. (*See* Decl. of Samantha A. Smith ("Smith Decl.") Ex. 1 ("Settlement Agreement"), ECF No. 41-1.)

#### A. The Class

The Settlement Agreement defines the class as: "All non-exempt employees of Defendant Lowe's Home Centers, LLC who received a wage statement at the time of their in-store termination during the Class Period and who worked overtime in the period covered by that wage statement." (*Id.* at 3.) The Class Period is from July 15, 2016, to January 31, 2018. (*Id.*)

Defendant originally estimated that there were 2323 members in the proposed class. The finalized class list contained 2320 class members. (Hernandez Decl. ¶ 5.)

#### B. Settlement Fund

The Settlement Agreement provides a non-reversionary settlement of $250,000 (the "Gross Settlement Amount") to be distributed pro rata. (Settlement Agreement 5.) The Gross Settlement Amount includes "any statutory and civil penalties, damages, or other relief arising from Defendant's provision of allegedly inaccurate wage statements; interest, attorneys' fees and costs . . . the fees and costs of the Administrator . . . including any fees and costs in connection with notice and the exclusion process, up to a maximum of Thirty Thousand Dollars ($30,000); settlement payments; and the incentive award." (*Id.*) After deducting the class counsel fees, litigation costs, incentive award, administration fees, and PAGA allocation, the net settlement amount is estimated at $111,157.60. (Hernandez Decl. ¶ 14.) This results in each class member

receiving $50.89, which consists of a pro rata share of the net settlement proceeds of $48.20 plus a pro rata share of the PAGA allocation in the amount of $2.69. (*Id.*) The class members who opted out will also receive their pro rata share of the PAGA allocation of $2.69. (*Id.*) Any check uncashed within 180 days of issuance will be transmitted to the California Department of Industrial Relations Unpaid Wage Fund in the name of the settlement class member. (Settlement Agreement 12.)

**C.     Releases**

In return for the settlement payment, all class members other than those who opted-out will release Defendant from:

> All claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, that were or could have been asserted in the lawsuit, whether in tort, contract, statute, rule, ordinance, order, regulation, or otherwise, for violation of California Labor Code § 226, including claims for statutory penalties and civil penalties pursuant [to] PAGA.

(*Id.* at 13.) Further, the Settlement Agreement provides that the settling class members waive and relinquish the rights and benefits of California Civil Code section 1542. (*Id.*)

**D.     Notice and Response**

Notice was sent to class members pursuant to the Settlement Agreement and the method approved by the Court. (Order 11–13.) The Class Notice adequately describes the litigation and the scope of the involved class. (Hernandez Decl. Ex. A ("Class Notice").) Further, the Class Notice explains (1) the amount and makeup of the Gross Settlement Amount; (2) the plan of allocation; (3) that Plaintiff's counsel and Plaintiff will apply for attorneys' fees, costs, and a service award, and (4) the class members' option to participate, opt out, or object to the settlement. (Class Notice 2–6.)

On April 9, 2019, ILYM received class information from Defendant, uploaded the information to its database, and checked for duplicates and other discrepancies. (Hernandez Decl. ¶ 5.) ILYM then conducted a national change of address search to update and confirm the mailing addresses for the class members. (Hernandez Decl. ¶

4

6.) On April 26, 2019, ILYM mailed the Class Notice to all 2320 individuals. (Hernandez Decl. ¶ 7.) Eighty-seven Class Notices were returned as undeliverable. (Hernandez Decl. ¶ 8.) ILYM performed a skip trace of the returned Class Notices and was able to update thirty-eight addresses. (Hernandez Decl. ¶ 8.) As of June 28, 2019, 49 Class Notices were deemed undeliverable because ILYM found no updated addresses. (Hernandez Decl. ¶ 8.)

ILYM received fourteen requests for exclusion and no objections. (Hernandez Decl. ¶¶ 11–12.) Accordingly, the total class is comprised of 2306 members, which represents a 99.40% participation rate. (Hernandez Decl. ¶ 13.)

Plaintiff now moves for final approval of the class action settlement, and also seeks: attorneys' fees of one-third the common fund ($83,333.33), reimbursement of costs totaling $2476.11, settlement administration costs of $23,032.96, and a service award of $5000.

## IV. ANALYSIS

### A. Class Certification

The Court previously found that the class merited certification, and nothing has changed since the Court conditionally certified the class. Accordingly, the Court maintains its approval.

### B. Fairness of Settlement Terms

The Court also previously found that the settlement was fair, adequate, and reasonable in its preliminary approval order. (Order 7–9.)

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," a court may consider some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed

settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). The settlement is appropriate when analyzing these factors.

### 1. Strength of Plaintiff's Case

Plaintiff estimated that the damages and penalties for Defendant's alleged wage statement violation "could have reached over $650,000." (Mot. for Final Approval 11.) However, Plaintiff discounted the value of the penalties in light of the probable defenses and a prior settlement that could have reduced the size of the class. (Mot. for Final Approval 9, 11.) Additionally, Plaintiff was concerned that the Court might exercise its discretion to reduce the PAGA penalties if the Court found them to be "unjust, arbitrary and oppressive, of confiscatory." Cal. Labor Code § 2699(e)(2).

Under these circumstances, Plaintiff appears to be settling disputed claims, which favors approving the settlement. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

### 2. Risks and Expense of Litigation & Status of Proceedings

The parties engaged in an initial round of written discovery and document production prior to engaging in several months of settlement negotiations. (Mot. for Final Approval 2–3.) Without settlement, the cost of continuing to litigate this class action would be great because of continued discovery and motion practice. This factor weighs in favor of approving the settlement.

### 3. Risks of Maintaining Class Action Status

Plaintiff sets forth his belief that if the case proceeded, Defendant would likely attempt to enforce its arbitration agreement containing class action waivers, potentially eliminating all recovery to unnamed class members. (Mot. for Final Approval 12.) Thus, this factor weighs in favor of approving the settlement.

#### 4. Amount of Settlement

The Settlement Agreement provides for a Gross Settlement Amount of $250,000, which is a substantial benefit to the class. No portion of the fund will revert back to Defendant. This amount represents approximately 38.46% of Defendant's potential liability of $650,000 as identified by Class Counsel. In wage and hour class action cases, the acceptable range of recovery in settlement is usually lower. *See, e.g.*, *Ruiz v. JCP Logistics, Inc.*, No. CV 13-1908-JLS (ANx), 2016 WL 6156212, at *8 (C.D. Cal. Aug. 12, 2016) (finding recovery of 39.65% of the potential damages to be higher than the typical range of accepted recoveries); *Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (finding recovery of 24% of the estimated damages reasonable).

#### 5. Experience and Views of Class Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). Class Counsel has experience serving as plaintiffs' counsel in wage and hour actions (Smith Decl. ¶¶ 31–46) and has endorsed the settlement as fair, reasonable, and adequate (Smith Decl. ¶ 30). Thus, this factor favors final approval.

#### 6. Presence of Government Participant

The California Labor & Workforce Development Agency is aware of this settlement and has not objected. (Smith Decl. ¶ 25, Ex. 2.)

#### 7. Reaction of Class Members

Only 14 class members opted out of the settlement, and there are no objections. (Hernandez Decl. ¶¶ 11–12.) Given the positive reaction to the settlement, the absence of any objections, and a minimal number of opt-outs, this factor weighs in favor of granting final approval. *See In re Omnivision*, 559 F. Supp. 2d at 1043.

On balance, these factors weigh in favor of approving the settlement.

## C. Conclusion as to Final Approval of the Settlement

Having considered the above factors, the Court finds that the proposed settlement is fair, reasonable, and adequate. Accordingly, the Court **GRANTS** Plaintiff's Motion for Final Approval of the Class Action Settlement.

## V. MOTION FOR FEES, COSTS, AND INCENTIVE AWARD

### A. Attorneys' Fees

Class Counsel seeks 33.33% of the Gross Settlement Amount ($250,000), which totals $83,333.33. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

In the Ninth Circuit, contingency fee recovery is typically in the range of 20% to 33.33% of the total settlement value, with 25% considered a benchmark. *See In re Bluetooth*, 654 F.3d at 941. "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* at 942. Courts may also "cross-check" the percentage-of-the-fund approach under circumstances where the fees seem suspect. *See id.* at 944. The Ninth Circuit has identified a number of factors that a court may consider in assessing whether an award is reasonable, including: (1) the

results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the financial burden carried by the plaintiff. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). The lodestar method can also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050.

Under, the percentage method, Class Counsel's fee request seeks an upward departure from the benchmark. For the following reasons, the Court finds the requested award to be excessive and awards attorneys' fees of 25% of the Gross Settlement Amount.

### 1. Results Achieved

Plaintiff did not address this factor in its Motion for Attorneys' Fees. Regardless, Class Counsel achieved a settlement that represents approximately 38.46% of the maximum potential damages calculated by Class Counsel. As discussed previously, in wage and hour class action cases, the acceptable range of recovery in settlement is usually lower.

### 2. Risk of Litigation

Plaintiff argues that Class Counsel taking the case on contingency warrants an enhancement from the benchmark. (Mot. for Att'y Fees 12.) However, Plaintiff does not address the actual factor regarding the merits of Plaintiff's case and the risks posed if the case continued. *See Vizcaino*, 290 F.3d at 1048 (discussing the risks including the relevant procedural posture of the case). Plaintiff's claim in this case is straightforward: Defendant failed to provide accurate wage statements. (Mot. for Att'y Fees 13.) Plaintiff cites the general inherent risks with class certification and liability, but nothing to indicate that this case is atypical of wage and hour class actions. *See Ruiz*, 2016 WL 6156212, at *8 (finding that a typical wage and hour class action does not justify an upward departure from the benchmark); *see also Vizcaino*, 290 F.3d at 1048 (affirming a 28% fee award for an "extremely risky" case). Accordingly, the Court finds that this factor does not justify an upward departure from the 25% benchmark.

### 3. Skill Required and Quality of Work

Plaintiff states that Counsel regularly litigates wage and hour claims and has considerable experience settling wage and hour class actions. (Mot. for Att'y Fees 15; Decl. of Samantha A. Smith ("Suppl. Smith Decl.") ¶¶ 17–30, ECF No. 40-1.) Class Counsel collectively spent 148.5 hours on (1) performing legal and factual research of Plaintiff's claims; (2) reviewing over a hundred pages of documents; (3) analyzing class-wide data and constructing a damages model; (4) preparing the Settlement Agreement; (5) drafting the preliminary and final approval motions; (6) researching, drafting, and revising the First Amended Complaint; (7) preparing discovery responses; (8) overseeing the notice process; (9) discussing the case internally for strategic purposes; and (10) drafting various stipulations. (Suppl. Smith Decl. ¶ 35.) Based on Class Counsel's own descriptions, the work performed does not support a finding that this case required exceptional skill. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 467 (E.D. Cal. 2013) (finding that "a garden-variety wage and hour class hour" does not warrant a departure from the 25% benchmark). Although Class Counsel is probably skilled in wage and hour class actions, the skill and quality of the work in this particular case do not warrant an upward departure. Accordingly, the Court finds that this factor does not justify an upward departure from the 25% benchmark.

### 4. Contingent Nature

Class Counsel took this case on a contingent basis. (Suppl. Smith Decl. ¶ 37.) "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio*, 291 F.R.D. at 457; *see also Omnivision*, 559 F. Supp. 2d at 1047 (finding that the continent nature of a case justifies a larger fee). Accordingly, the Court finds that this factor favors an upward departure.

### 5. Lodestar Cross-Check

The lodestar method calculates a fee award by multiplying hours worked by hourly rate, and typically provides a multiplier that takes into account risk endured by

class counsel. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Courts may apply the "lodestar method as a cross-check of the percentage method." *Vizcaino*, 290 F.3d at 1050–51. Here, Class Counsel submits a declaration that establishes:

| Name | Rate | Hours | Lodestar |
|---|---|---|---|
| Samuel A. Wong | $735 | 35.6 | $26,166.00 |
| Jessica L. Campbell | $625 | 10.2 | $6375.00 |
| Ali S. Carlsen | $500 | 35.2 | $17,600.00 |
| Samantha A. Smith | $625 | 67.5 | $42,187.50 |
| | **Totals** | **148.50** | **$92,328.50** |

(Suppl. Smith Decl. ¶ 34.)

a. <u>Hours</u>

"[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (alterations in original) (quoting *Covillo v. Specialtys Cafe*, No. C–11–00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014)).

Here, Class Counsel's declaration sets forth how they spent their time. Class Counsel does not provide the Court with detailed records of the time spent. The Court's review of the Motion for Attorneys' Fees indicates that the hours spent warrant a reduction based on billing for administrative tasks and a lack of diligence in preparing the motions. For example, Ms. Smith's declaration details Kashif Haque's qualifications even though Mr. Haque did not bill any hours in this case. (*See* Suppl. Smith Decl. ¶¶ 21–26.) Moreover, the Motion for Attorney's Fees contains errors that suggest that Class Counsel is seeking less than one-third of the settlement fund, likely an oversight while copying and pasting from a prior motion. (Mot. for Att'y Fees 10 ("Courts in this circuit have often awarded fees constituting one-third of the settlement

fund, which is more than Class Counsel is requesting here."). Further, Class Counsel indicates that it billed for filing of the First Amended Complaint and serving discovery and discovery responses. (Suppl. Smith Decl. ¶ 35.) Such tasks warrant a reduction in the lodestar. *See Ruiz*, 2016 WL 6156212, at *10 (reducing the lodestar by 20% based on inflated billing that included supervising the e-filing of papers and the notice process, preparing proofs of service, speaking with class members, and scheduling depositions).

### b. Rates

In evaluating rates, courts consider the reasonable rates for the specific geographic area and type of practice. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986). Here, Class Counsel sets forth several California Superior Courts awarding them fees at the rates requested here. (Suppl. Smith Decl. ¶ 32.) However, Class Counsel provides no cases in the Ninth Circuit or Central District that have approve their rates. Courts in the Central District have reduced class counsel's rates in similar wage and hour class actions. *See Ruiz*, 2016 WL 6156212, at *9 (reducing class counsel's hourly rate and allowing a maximum hourly rate of $600 for class counsel in wage and hour class action case). Class Counsel has not sufficiently justified their requested rates.

Based on Class Counsel's failure to adequately support their hours worked and rates, the Court declines to engage in speculation to use the lodestar as a cross check.

### 6. Conclusion

Class Counsel's fee request is excessive, particularly given the risk of litigation, and skill required and quality of representation factors. Accordingly, the Court awards Class Counsel $62,500, which is 25% of the Gross Settlement Amount.

**B. Litigation Expenses & Settlement Administrator Fees**

Class Counsel seeks $2476.11 in litigation expenses and an award of $23,032.96 to ILYM, the settlement administrator. (Mot. for Att'y Fees 17–18; Suppl. to Mot. for Att'y Fees 1, ECF No. 42.) Class Counsel's litigation expenses appear reasonable in relation to the settlement amount, and included filing fees, copies, postage, travel, and

other litigation-related expenses. (Suppl. Smith Decl. ¶ 38.) The reasonableness of the expenses are further confirmed by the fact that there are no objectors and the Settlement Agreement allows for reimbursement of expenses up to $25,000.

ILYM submits that the services it provides include: (1) printing and mailing the Class Notice; (2) receiving and processing requests for exclusion; (3) calculating settlement award amounts; (4) processing and mailing settlement award checks; (5) handling tax withholdings; (6) handling tax returns; (7) handling distribution of unclaimed funds; and (8) other tasks as requested by the Court or parties. (Decl. of Nathalie Hernandez ("Suppl. Hernandez Decl.") ¶ 3, ECF No. 40-2.) ILYM's fees are also less than originally predicted. As such, ILYM's request for fees and costs of is reasonable.

Accordingly, Class Counsel is awarded $2476.11 in litigation and expenses and ILYM's is awarded $23,032.96 in fees and costs.

## C. Incentive Award

Class Counsel requests an incentive award of $5000 for Mr. Saenz. (Mot. for Att'y Fees 4.) Mr. Saenz represented that he participated in many conversations with Class Counsel regarding the case, reviewed documents, and assisted in settlement negotiation. (Decl. of Joseph Saenz ¶¶ 4–5, ECF No. 40-3.) "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. CV 16–03347 BRO (GJXx), 2017 WL 708766, at *18 (C.D. Cal. Feb. 16, 2017) (citing *Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). Accordingly, the incentive award is appropriate.

Mr. Saenz is awarded $5000 as an incentive award.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Final Approval of Class Settlement (ECF No. 41); **GRANTS IN PART** the Motion for Attorneys' Fees and Costs (ECF No. 40).

July 31, 2019

                                                **OTIS D. WRIGHT, II**
                                          **UNITED STATES DISTRICT JUDGE**